The plaintiff alleges that he is the owner of 20 shares of Class A preferred stock of the Magnolia Sugar Cooperative, Inc., of the par value of $25 per share, bearing seven per cent per annum cumulative dividends, and that he is a creditor of said Cooperative for the face value of said preferred stock, plus the accrued dividends thereon for three years; that the voting power in said Cooperative is vested in the common stock, the preferred stock not enjoying any voting power. He further alleges that, with a view of freezing out the preferred stockholders in the corporation of their equity in its assets, the common stockholders formed another corporation named the Magnolia Cooperative, Inc., and set up the same officers in the new corporation as were in the old one, and in pursuance of a design on their part to defraud and freeze out the preferred stockholders, did purport to transfer to the New Orleans Bank for Cooperatives all of the property and assets of the said Magnolia Sugar Cooperative, Inc., for the purported consideration of the payment of a mortgage debt due by said Magnolia Sugar Cooperative to the New Orleans Bank for Cooperatives, amounting to the sum of $362,621.06, and that the said Bank for Cooperatives on the same day, and in pursuance of the scheme to defraud and freeze out the preferred stockholders, including plaintiff, did transfer to the new corporation aforesaid all of said property and assets for the same consideration expressed in the dation en paiment; that at the time of the execution of said attempted dation en paiment by the said Magnolia Sugar Cooperative, Inc., it was insolvent to the knowledge of its officers and board of directors.
The plaintiff asks that the purported dation en paiment from the Magnolia Sugar Cooperative to the New Orleans Bank for Cooperatives and the transfer by the latter to the new corporation, Magnolia Cooperatives, Inc., be set aside; in the alternative, that the new corporation be declared the alter ego of the old corporation in which he holds the preferred stock, and that the new corporation be condemned to pay his preferred stock with accrued dividends, and that his claim be decreed superior to the mortgage retained on the property transferred to the new corporation by the New Orleans Bank for Cooperatives.
There are two principal grounds set up and relied on by plaintiff in his attack on the dation en paiment made to the New Orleans Bank for Cooperatives by the Magnolia Sugar Cooperative of all its property in settlement of the mortgage debt; viz., that a preference was given this creditor by the insolvent debtor corporation in contravention of Article 2658 of the Civil Code, which prohibits an insolvent debtor from giving his property in payment of a debt to one creditor to the prejudice of the other creditors; and, secondly, the resolution of the board of directors of the insolvent Cooperative authorizing the dation en paiment shows that it was passed by only six of the eleven directors of the corporation, whereas, under Section 41 of Act 250 of 1928, the board of directors of an insolvent corporation can authorize the transfer of all its assets only on the vote of two-thirds of the board.
The substance of the answers of the defendants is an admission of the insolvency of the Magnolia Sugar Cooperative, Inc., at the time of the execution of the dation en paiment to the New Orleans Bank for Cooperatives, but it is specially denied that the plaintiff is a creditor of the Cooperative by reason of being a preferred stockholder therein, and it is also denied that any fraud was intended or practiced on plaintiff in these transfers. On the other hand, it is alleged that these transfers were made in good faith and with the approval of more than seventy five or eighty per cent of the common stockholders present at a meeting held for the purpose of deciding on the best course to pursue in view of the insolvent condition of the Cooperative; that the board of directors passed a resolution by a vote of more than two-thirds of its membership, authorizing the president of the insolvent Cooperative to transfer all of the assets of the corporation to the New Orleans Bank for Cooperatives in payment of the mortgage debt due the latter; that through error, the secretary in certifying the resolution passed by said board of directors, stated that there were six members of the board present and voting for said resolution, whereas, nine of the eleven members of said board were actually present and voted for said resolution. A full statement of the condition of the insolvent Cooperative was set up by two of the defendants in their answers, together with the various meetings and proceedings of the shareholders and board of directors leading up to and authorizing the transfer of the property of the insolvent Cooperative to its mortgage creditor aforesaid. *Page 377 
The plaintiff filed a plea of estoppel against the defendants on the ground that they are estopped from questioning the certification by the secretary to the resolution passed by the board of directors of the Cooperative, and cannot now show that nine members voted for the resolution in contradiction of the certificate which shows that only six members were present and voted for said resolution. All three defendants filed exceptions of no right of action, and a plea of prescription of ninety days provided for by Section 41 of Act 250 of 1928 for attacking a sale of all the assets of a corporation.
The exceptions and pleas were referred to the merits, and after the trial of the case, the court sustained the exception of no right of action on the part of plaintiff to attack the dation en paiment for the reason that he was not a creditor of the Cooperative by reason of being a preferred stockholder only. The plaintiff has appealed from the judgment which dismissed his suit on the exception of no right of action.
Another suit was filed against the same defendants by the Citizens' Bank Trust Company in which practically the same allegations were made and the same pleadings filed as were made and filed by Funderburk and the defendants in the present suit, the only difference in the two suits being that the Citizens' Bank Trust Company is the holder of sixty shares of the preferred stock, aggregating in par value the sum of $1500, whereas Funderburk owns only twenty shares of this stock. The two cases were consolidated for purposes of trial, and similar but separate judgments were rendered in each case. What is said in this opinion will also apply to the case of Citizens' Bank 
Trust Company against these same defendants, but a separate decree will be entered in that case. 8 So.2d 380.
With reference to the plea of estoppel filed by the plaintiff as to the certification of the resolution passed by the board of directors of the insolvent Cooperative, authorizing the transfer of its assets to the New Orleans Bank for Cooperatives, we cannot see wherein the defendants would be estopped from showing that the secretary of the board of directors made an error in stating in the copy of the resolution annexed to the transfer that there were only six members present and voted for the resolution, whereas nine members were actually present and voted for the resolution. In order for an estoppel by deed to be binding on those against whom it is pleaded, the person pleading the estoppel must show that he has been induced to change his course to his disadvantage by reason of the statement made in the deed, thereby causing him to suffer damage or disadvantage if such statement made in the deed on which he relied is permitted to be changed or altered after he has acted on the assumption that such statement made in the deed is correct. In the present case, however, the plaintiff has not shown, and cannot show, that this erroneous statement made in the certified copy of the resolution annexed to the transfer has caused him to change his course or take a position to his disadvantage by reason of such statement. The plea of estoppel is therefore not well founded and is hereby overruled. In this connection, we might here observe that the plaintiff objected to the introduction of testimony to show the error made by the secretary as to the number of directors actually present and voting for the resolution. In view of the fact that this error is set up in the pleadings, no violation of the rule against the admission of parol testimony to vary or change the contents of a written document is involved in admitting such testimony, and we are of the opinion that the trial judge was correct in admitting parol testimony to show the actual number of directors present and voting for the resolution.
As to the plea of prescription of ninety days filed by defendants against the right of plaintiff to attack these transfers under the provisions of Section 41 of Act 250 of 1928, in view of the conclusion reached by us on the merits, we deem it unnecessary to pass on this plea.
We think the trial judge was correct in holding that the plaintiff is not a creditor of the Cooperative by reason of the fact that he holds preferred stock therein providing for the payment of seven per cent per annum cumulative dividends thereon. This stock on its face, as well as under the charter provisions under which it was issued, provides that the holder shall be entitled to these cumulative dividends if earned and declared by the board of directors, and the stock shall be preferred as to the assets of the corporation on liquidation over Class B preferred stock and the common stock. No allegation or showing is made that any dividends on the preferred stock were ever earned, and, of *Page 378 
course, could not be declared by the board of directors. If, as alleged by the plaintiff and admitted by the defendants, the corporation was insolvent in that its assets were insufficient to pay its mortgage and ordinary debts, the plaintiff had no equity in these assets as his claim consisted only in the face value of his preferred stock, as there were no dividends earned and declared thereon, and his claim was subordinated to the payment of the debts of the corporation.
The holder of preferred stock in a corporation is a stockholder and not a creditor of the corporation. If the cumulative dividends have been earned and declared, the holder of the preferred stock then becomes a creditor of the corporation to the extent of the earned and declared dividends, but these dividends must be declared out of the profits of the corporation and are in no sense to be considered as interest due by the corporation on a debt due by it to the preferred stockholder. 13 Am.Jur., p. 696 et seq. Sections 690 and 691.
While we agree with the trial judge that the plaintiff did not have a right to attack the transfer of the assets of the corporation as a creditor under the above mentioned Codal article, he did have this right as a minority stockholder in the corporation under the provisions of paragraph III of Section 41 of Act 250 of 1928, Dart's Gen. Stat. 1121, which gives a creditor or minority stockholder, with or without voting rights, the right of attacking a sale or transfer of all the assets of an insolvent corporation on the authorization of a two-thirds vote of the board of directors, under paragraph II (b) of this same section. Plaintiff alleges in his petition that the transfer of all the assets of the corporation to the New Orleans Bank for Cooperatives was not made in conformity to the above section of the general corporation law of the State; that the transfer was made to deprive him of his equity in these assets, and for that reason he was entitled as a minority stockholder to prove, if he could, the charges and allegations which he made.
In this connection, we quote with approval the following statement of the law in 13 Am.Jur. p. 476, Section 424:
"As a result of the duty owed by the majority stockholders to the minority, it is generally held that the majority stockholders will be liable at the suit of a minority stockholder for any misappropriation by corporate action of the funds or property of the corporation for which they, as majority stockholders, are responsible. The courts will not permit them to dissipate or fraudulently dispose of corporate funds or sell, over the objection of minority stockholders, all the corporate property. Majority stockholders will not be permitted to discontinue the business of a corporation for the purpose of turning it over to another corporation and excluding minority stockholders from participating therein."
Coming now to a consideration of the facts in the case, the record overflows with proof to the effect that this Cooperative was unable to meet its obligations. The directors held a meeting in June, 1940, at which time the affairs of the Cooperative were fully discussed, and it was agreed that the members of the board would go in a body to New Orleans and discuss with the officials of the Bank for Cooperatives the situation, with a view of working out some plan by which the sugar factory in Terrebonne Parish could continue to operate. Discussions were had by the directors of the Cooperative and its largest and principal creditor, the Bank for Cooperatives, and it was decided that the best thing to do would be for the Cooperative to transfer all of its property to the Bank for Cooperatives in settlement of the mortgage which the latter held on this property, in excess of $362,000 for what are called facility loans made to the Cooperative. In addition to this amount, the Cooperative owed this mortgage creditor something over $100,000 for delinquent operating loans, plus some $48,000 past due interest.
In order that the Bank for Cooperatives might legally reduce the interest charge on the large debt due it by the Cooperative, it was understood that the latter would transfer its assets, covered by this mortgage, to the Bank for Cooperatives in full settlement of the mortgage debt, and that the Bank for Cooperatives would re-transfer this same property to the new corporation to be organized in the most part of those who were stockholders in the old Cooperative, and any others who would be eligible to hold stock in the new concern. In this re-transfer of the property to the new corporation, the amount of the mortgage was the basis for the consideration of that transfer, the transfer being made on terms of credit, represented by two notes of the new corporation, the first note for $100,000 bearing four per cent per annum interest, and the other note for $262,621.06, without *Page 379 
interest. That is to say, the Bank for Cooperatives by this procedure was enabled to reduce the interest charge to less than one-third that charged the old Cooperative, which reduction in interest could only be legally made by it under the federal law by considering the mortgaged property which it took over as salvage. No arrangement was made for the payment of the remainder of the debt due it by the old Cooperative amounting to something over $150,000, which amount the Bank for Cooperatives stands to lose and must charge off.
A meeting of the stockholders of the Cooperative was held in August, 1940, at which time 75 or 80 per cent were present, and the entire situation was fully discussed and the procedure approved as outlined in the discussion between the officers of the Cooperative and the Bank for Cooperatives. In line with that arrangement, nine members of the board of directors were present at a meeting held on September 9, 1940, when, by unanimous vote, a resolution was passed, after full discussion, whereby the president of the Cooperative was authorized to transfer all of the property of the Cooperative to the New Orleans Bank for Cooperatives under the terms and for the purpose hereinabove mentioned. This resolution sets out in full the reason and purpose for this transfer and the terms and conditions under which it was to be made. There is no question under the proof but that nine out of eleven directors were present at this meeting and voted for this resolution.
Prior to the holding of the various meetings above referred to, an audit of the affairs of the Cooperative had been made which showed that the liabilities of the Cooperative exceeded its assets in the sum of more than $118,000. There were two other creditors of the Cooperative besides the said Bank for Cooperatives, and these two creditors were familiar with and consented to the transfer of the property of the Cooperative under the arrangements heretofore outlined.
The plaintiff complains because he was not given any notice of these various meetings and did not have the opportunity of participating in the discussions and opposing the plan adopted. While it is true that he was not given notice of the meeting of the stockholders, and that he did not know of the transfer of the assets of the Cooperative until after the transfer had been recorded, yet it must be remembered that, as a preferred stockholder, he had no voting rights. Moreover, he has not shown whereby he has been injured because of any failure to give him notice of this meeting, nor has he shown any injury or damage accruing to him on account of the action taken by the common stock holders and directors in transferring the property to a mortgage creditor. While the plaintiff indicates in his testimony that the property of the Cooperative might have been worth more than the amount of the mortgage debt for which it was transferred (his statement being more in the nature of an assumption than the proof of value), yet he has signally failed to prove, or even attempt to prove that the value of the property transferred exceeded the total debts due by the Cooperative, so as to leave any possible equity which he could have in these assets to be applied on the redemption, in whole or in part, of his preferred stock.
Our conclusion is that the plaintiff has not only failed to show that he was injured by the transaction which he attacks, but the record convinces us of the good faith of all the officers and stockholders who had anything to do with making the transfer now under attack. In addition to their good faith in the transaction, we are also convinced of the necessity which prompted them in making the transaction, as well as their good judgment in making it possible for the sugar factory to continue operations, thereby affording relief to the small sugar planters in the vicinity, who otherwise would have suffered considerable inconvenience and disadvantage. The transfer of the assets of the Cooperative was made under the authority of the general incorporation laws of this State to which reference has already been made.
For the reasons herein assigned, it is ordered that the judgment appealed from be reversed and set aside insofar as it sustained the exception of no right of action; that insofar as said judgment dismissed the suit of plaintiff at his cost, it is hereby affirmed. *Page 380